COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| KATHY JONES-HOSPOD, | § | No. 08-22-00066-CV |
| Appellant, | § | Appeal from the |
| v. | § | 425th District Court |
| STANLEY HOSPOD, | § | of Williamson County, Texas |
| Appellee. | § | (TC# 19-2565-F425) |

## O P I N I O N

Kathy Jones-Hospod, Appellant, appeals the Final Decree of Divorce dissolving her marriage to Stanley Hospod, Appellee, entered after a bench trial. We find no error in the trial court's discovery sanctions or the denial of Kathy's motion to disqualify Stanley's trial counsel. We likewise find no harmful error in the division of the marital estate. We affirm, except as to the award of conditional appellate attorney's fees, which we reverse and remand for a new trial solely on that issue.

## BACKGROUND

Kathy Jones-Hospod filed for divorce from Stanley Hospod in 2019, after sixteen months of marriage. In her Original Petition, Kathy alleged that Stanley was "guilty of cruel treatment towards" her and that he "committed fraud on the community estate." She also requested that the trial court reconstitute the community estate to its full value, award her a disproportionate share,

and confirm her separate property. Stanley filed a general denial of Kathy's claims and a counterpetition for divorce.

### A. Motion to disqualify

Kathy tried repeatedly to disqualify Stanley's chosen counsel, Nikki G. Maples. The first such effort began two months after Stanley filed his general denial when Kathy filed a motion to disqualify Maples, claiming she had a previous attorney-client relationship with Kathy. Kathy claimed that in the summer of 2018 she "disclosed to Maples . . . confidential, private and non-public information regarding [herself], her legal cases, [and] her relationship with her husband" in connection with Maples representing her in a pending guardianship case. Kathy claimed that she and Maples had a "three-hour attorney-client meeting" for which Maples charged her $600. Kathy submitted a sworn affidavit in support of her motion to disqualify Maples, which the trial court struck as inadmissible hearsay.

Kathy did not appear at the hearing on her motion. Maples appeared and testified that she communicated with Kathy in 2018 about a guardianship matter. Maples met with Kathy for approximately two hours during which she reviewed several public pleadings and a confidential summary of the guardianship case that Kathy prepared. Maples declined representation because she does not practice guardianship or probate law and referred Kathy to several other attorneys. She also denied that she retained any of Kathy's documents or that they discussed Kathy's marriage with Stanley.

The trial court denied the motion to disqualify in open court, reasoning that Kathy failed to meet her burden of proving "the existence of a substantial relationship between" Maples's prior representation of Kathy and the present litigation or "a genuine threat of revelation" of prior confidential information. It subsequently issued a written order on October 18, 2019, denying the motion to disqualify and awarding Stanley $5,615 in attorney's fees.

Kathy's next attempt to disqualify Maples occurred almost two years later when, on July 26, 2021, Kathy filed a motion to reconsider her motion to disqualify Maples based on alleged changed circumstances. In this motion, Kathy claimed that Stanley's Second-Amended Counterpetition for Divorce—which was filed more than a year prior—showed that Maples had a conflict of interest. Specifically, Kathy alleged that Stanley's request for a disproportionate share of the community estate showed Maples's representation of Stanley was substantially related to the guardianship case that Kathy had discussed with Maples. She did not, however, explain how Stanley's request for a disproportionate share of the estate made the two matters substantially related.

Kathy also argued that two requests for production served on her by Stanley proved that Maples should be disqualified. Specifically, she claimed the request asking for documentation related to "any lawsuits . . . or other litigation" she has been a party to and the request asking for documents pertaining "to any criminal charges, investigations, allegations, complaints, and convictions" demonstrated the "substantial relationship" requirement between the guardianship case and the parties' divorce. Again, however, Kathy did not provide any explanation for why the discovery requests made the two cases "substantially related." There is no indication in the record that Kathy asked the trial court to consider or rule on her motion to reconsider.[1]

In her final attempt to disqualify Maples, Kathy challenged the trial court's denial of her motion to disqualify Maples in her motion for a new trial, which was denied by operation of law. *See* TEX. R. CIV. P. 329b(c).

---

[1] Kathy also incorporated by reference her motion to reconsider the disqualification of Maples into her December 13, 2021, "Objections to this Court's 'Order on Motion for Sanctions . . . .'" There is no indication in the record that Kathy asked the trial court to consider or rule on this Objection.

## B. Discovery and sanctions

After Kathy's motion to disqualify was denied, Maples on Stanley's behalf served Kathy with requests for production and inspection of documents, interrogatories, and requests for disclosure. Kathy did not provide substantive responses to any of these discovery requests. Instead, she leveled several objections, including an objection "to violations of the attorney-client privilege to her former counsel, Nikki G. Maples, her employee, Megan Jones, and the Law Office of Nikki G. Maples, PLLC, propounding any discovery . . . to her former client, [Kathy]." Stanley filed a motion to compel. After a hearing, the trial court overruled Kathy's objections and ordered her to respond to the discovery requests. The court also awarded Stanley $5,200 in attorney's fees pursuant to Texas Rule of Civil Procedure 215.

Despite the court's order, Kathy again failed to respond to Stanley's discovery requests, and Stanley filed a motion for sanctions pursuant to Rule 215. After a hearing on the motion, the court sanctioned Kathy for failing to comply with its orders and enjoined her from introducing evidence that was not produced to Stanley for the purpose of supporting her claims, defending against Stanley's claims, or controverting Stanley's evidence. The court warned Kathy that if she did not comply with its discovery orders, her jury demand and parts of her petition would be stricken. The trial court then awarded Stanley $19,152.49 in attorney's fees.

Yet again, despite the court's stern warning, Kathy chose not to respond to Stanley's discovery requests, and Stanley filed a Motion for Further Sanctions. At the hearing on this motion, Kathy's attorney declared that Kathy was not required to respond to discovery requests propounded by Maples because doing so would force her to "give up her constitutional rights to attorney-client confidentiality[.]" She stated the only way Kathy would respond to discovery is if it was "not propounded by her former lawyer[.]"

4

The trial court subsequently issued an order outlining the various orders Kathy had violated. The court noted that it had "imposed less severe sanctions" on Kathy that "have not been sufficient to promote compliance." It then struck Kathy's pleadings, including her demand for a jury trial, as a sanction. The court also struck a portion of Kathy's Original Petition for Divorce, including her allegation of cruel treatment and her requests for a disproportionate share of the community estate and confirmation of her separate property. Additionally, the court awarded Stanley $8,718.50 in additional attorney's fees.

## C. Trial

The trial court held a final hearing to the bench in late December 2021. Kathy did not attend but was represented by counsel of record who offered no evidence but did conduct cross examinations of Stanley's witnesses. At the final hearing, Stanley offered his opinion of the value of the parties' assets and the marital estate as a whole through an exhibit with a proposed property division of the marital estate. Stanley testified that he helped his attorneys prepare the exhibit and that to the best of his knowledge the values shown on the exhibit were true and accurate.

Stanley testified that Kathy owned real property located at 208 Prize Oaks Drive, Cedar Park, Texas, prior to marriage. The trial court, over objections from Kathy's counsel, nevertheless declined to recognize the property as Kathy's separate property because Kathy's claim for separate property in her Original Petition for Divorce had been struck as a sanction for her discovery misconduct and the property was therefore presumed community in nature.

In its Final Decree of Divorce, the court divided the marital estate as requested in Stanley's proposed property division, awarding the 208 Prize Oaks property to Kathy as part of the division of the community estate. The decree also awarded Stanley $20,000 for appellate attorney's fees against Kathy "conditioned on her pursuit of an untimely or unsuccessful appeal."

5

Kathy filed a motion for new trial that was overruled by operation of law. *See* TEX. R. CIV. P. 329b(c). This appeal followed.

## ANALYSIS

Kathy presents the following nine issues:

1. Whether the trial court erred when it denied Kathy's motion to disqualify Maples.

2. Whether the trial court violated the Texas Supreme Court's decision in *Medina v. Zuniga*, 593 S.W.3d 238 (Tex. 2018) when it required Kathy to choose between "waiving" her rights to assert an attorney-client privilege or being sanctioned under Texas Rule of Civil Procedure 215.

3. Whether the trial court erred when it struck Kathy's jury demand as a discovery sanction.

4. Whether the trial court erred in granting a "default judgment" against Kathy.

5. Whether the trial court erred by applying a "death penalty" sanction against Kathy.

6. Whether the trial court erred by dividing the parties' estate without a complete picture of their community property.

7. Whether the trial court erred in awarding attorney's fees against Kathy.

8. Whether the trial court's findings of fact are supported by the record.

9. Whether the trial court's conclusions of law are correct.

### A. Preliminary determinations

As a preliminary matter, because Kathy's issues eight and nine raise no additional challenges to the trial court's findings of fact and conclusions of law that are not addressed in Kathy's other issues, they are subsumed by Kathy's issues one through seven. Therefore, the sufficiency of the trial court's findings of fact and conclusions of law as to Kathy's specific challenges is addressed with our analyses of those issues. *See Hulen v. Hamilton*, No. 2-06-288-CV, 2008 WL 553812 at *3 (Tex. App.—Fort Worth, Feb. 28, 2008, no pet.) (mem. op.) (citing

6

*Zagorski v. Zagorski*, 116 S.W.3d 309, 315 n.2 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (op. on reh'g)).

In addition, Kathy's issue five has been waived through inadequate briefing. Texas Rule of Appellate Procedure 38.1(i) requires appellants to supply a brief containing "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." As a result, when an issue is not supported by argument or citation to legal authority, there is nothing for the court to review. *See Fredonia State Bank v. General Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex. 1994); *Serafine v. Blunt*, No. 03-16-00131-CV, 2017 WL 2224528 at *8 (Tex. App.—Austin May 19, 2017, pet. denied) (mem. op.) (citing *Fredonia*, 881 S.W.2d at 284). An appellant thus waives any issue it fails to support with relevant authority. *Id.* Here, Kathy provided *no* argument in relation to her fifth issue: whether the trial court erred when it applied a "death penalty" sanction. She provides no citation to the record describing the alleged "death penalty" sanction nor any legal authority or standard related thereto. Kathy fails to adequately brief this issue. The appellate court has no duty to brief issues for an appellant and we will not do so here. *Huey v. Huey*, 200 S.W.3d 851, 854 (Tex. App.—Dallas 2006, no pet.). Because she did not comply with Rule 38.1(i), Kathy waived issue five, which is accordingly overruled.

We move now to the substantive analysis of Kathy's remaining issues.

**B.  Kathy did not meet her burden of proving Maples should be disqualified.**

In her first issue, Kathy argues the trial court erred in denying her motion to disqualify Maples because she met her burden of proving that the divorce proceeding was substantially related to Maples's former representation of Kathy or that there was a threat of Maples disclosing her confidential information.[2] We disagree.

---

[2] Most of Kathy's other issues spring at least in part from this assertion.

**(1) The trial court did not err in denying Kathy's motion to disqualify Maples.**

Texas courts recognize disqualification of counsel as a "severe remedy" because of the "immediate and palpable harm" it causes to both the trial court proceedings and a party's "right to have counsel of [their] choice." *In re Luecke*, 569 S.W.3d 313, 317 (Tex. App.—Austin 2019) (quoting *In re Nitla S.A. de C.V.*, 92 S.W.3d 419, 422 (Tex. 2002) (orig. proceeding)). Therefore, courts "must adhere to an exacting standard when considering motions to disqualify so as to discourage their use as a dilatory trial tactic." *Id.* (quoting *Spears v. Fourth Court of Appeals*, 797 S.W.2d 654, 656 (Tex. 1990)) (internal citations omitted). The party moving for disqualification bears the burden of proving the attorney should be disqualified "with specificity." *In re Thetford*, 574 S.W.3d 362, 373–74 (Tex. 2019). We review the trial court's refusal to disqualify a lawyer for an abuse of discretion. *In re TMD Defense & Space, LLC*, 649 S.W.3d 764, 770 (Tex. App.—El Paso 2022, no pet.) (citing *Spears*, 797 S.W.2d at 656). A trial court abuses its discretion "when it acts without any reference to guiding rules or principles." *In re Thetford*, 574 S.W.3d at 374.

While not binding, "courts and litigants often look to the Disciplinary Rules to decide whether an attorney is disqualified . . . ." *In re TMD Defense & Space*, 649 S.W.3d at 770. Relevant here is Rule 1.09 of the Texas Disciplinary Rules of Professional Conduct, which states that "[w]ithout prior consent," a lawyer should not represent another person in a matter adverse to a former client, if "the representation in reasonable probability will involve a violation of Rule 1.05[,]" or "if it is the same or a substantially related matter." Rule 1.05 addresses a lawyer's duties with respect to a client's confidential information. A lawyer can be disqualified from representing another person adverse to a former client if there is a "threat of disclosure" of confidential information. *Grant v. Thirteenth Court of Appeals*, 888 S.W.2d 466, 468 (Tex. 1994). "[M]atters are substantially related when the similarity of the facts involved 'creates a genuine threat that confidences revealed to [the client's] former counsel will be divulged to his present

8

adversary.'" *In re Thetford*, 574 S.W.3d at 374 (quoting *NCNB Tex. Nat'l Bank v. Coker*, 765 S.W.2d 398, 400 (Tex. 1989)).

Here, Kathy did not present any evidence in support of her motion to disqualify Maples. She did not appear at the hearing on the motion to testify and her sworn affidavit was struck by the trial court as inadmissible hearsay. She argues that the affidavit must be considered under the Texas Supreme Court's opinion in *Thetford*, which, according to Kathy "required the trial court to weigh and examine the entirety of the Motion to Disqualify[.]" We disagree with Kathy that *Thetford* requires the trial court to admit inadmissible hearsay in attorney-disqualification motions. Neither party objected on the basis of hearsay in *Thetford* and the Texas Supreme Court did not discuss any evidentiary issues in its opinion. Further, Kathy does not cite to *any* case law holding that affidavits are admissible over hearsay objections in attorney-disqualification hearings or indicating that we should deviate from the general principle that allegations contained in pleadings or motions are not evidence. *See Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995) ("[P]leadings are not competent evidence, even if sworn or verified."); *see also Yu v. Koo*, 633 S.W.3d 712, 729 (Tex. App.—El Paso 2021, no pet.). Indeed, we are instructed that "[m]ere allegations of unethical conduct" are not sufficient proof in a disqualification motion. *See In re TMD Defense & Space*, 649 S.W.3d at 770 (quoting *Spears*, 797 S.W.2d at 656).

Maples's testimony was the only competent evidence presented during the hearing. Maples testified she met with Kathy one time regarding a guardianship case, during which she reviewed some public pleadings and one confidential summary Kathy had prepared about the guardianship case. Maples did not discuss Stanley or his marriage with Kathy, nor retain any of the documents Kathy brought to the meeting. Maples told Kathy that she did not work in guardianship law and referred her to several attorneys she knew that practiced in the area. Based on this testimony, the trial court concluded her disqualification was not necessary. We hold the trial court did not abuse

9

its discretion in its decision. *See Grant*, 888 S.W.2d at 468; *In re Thetford*, 574 S.W.3d at 374. Kathy's first issue is overruled.

### (2) Motions to reconsider disqualification issue

Kathy claims the trial court erred in denying her July 26, 2021 and December 13, 2021 motions to reconsider the trial court's October 18, 2019 Order denying the motion for disqualification. In order to preserve an issue for appellate review, however, the party must make a timely request, motion, or objection, and the trial court must have ruled (or the party have on record an objection to a failure to rule). *Jonjak v. Griffith*, No. 03-18-00118-CV, 2019 WL 1576157, at *2 (Tex. App.—Austin Apr. 12, 2019, no pet.) (mem. op.) (citing TEX. R. APP. P. 33.1(a)). The mere act of filing a motion is insufficient to show that the party brought the motion to the trial court's attention or requested a ruling. *Arkoma Basin Exploration Co., Inc. v. FMF Assocs. 1990-A, Ltd.*, 249 S.W.3d 380, 387 (Tex. 2008) ("[T]he cardinal rule for preserving error is that an objection must be clear enough to give the trial court an opportunity to correct it.") While the appellate record shows the motions for reconsideration were filed, there is nothing in the record showing that Kathy asked the trial court to consider them or issue an order on them. The record contains no ruling on the motions.

While Kathy argued the disqualification issue in her January 18, 2022, motion for a new trial, Kathy does not argue here that the trial court erred in denying her motion for a new trial. That motion was denied by operation of law pursuant to Texas Rule of Civil Procedure 329b(c). Kathy thus failed to preserve error regarding the July 26, 2021 and December 13, 2021 motions to reconsider and the January 18, 2022 motion for new trial.

### C. The trial court's discovery sanctions did not violate Medina.

In her second issue, Kathy argues the trial court's orders requiring her to respond to discovery requests promulgated by Maples violated the Texas Supreme Court's decision in *Medina*

*v. Zuniga*, 593 S.W.3d 238 (Tex. 2019). She argues the trial court put her in an impossible position: either give up a litigation right—the attorney-client privilege—or be sanctioned. Kathy's reading of *Medina* is too broad.

In *Medina,* the Texas Supreme Court considered whether a party could be sanctioned under Texas Rule of Civil Procedure 215.4 for failing to admit negligence in response to a request for admission and later conceding the point at trial. *Medina*, 593 S.W.3d at 245. The Court found that requests for admissions were "never intended to be used as a demand upon a plaintiff or defendant to admit that he had no cause of action or ground of defense[.]" *Id.* at 244 (quoting *Sanders v. Harder*, 227 S.W.2d 206, 208 (Tex. 1950)). Therefore, "merits-preclusive requests for admissions that carry the threat of sanctions risk putting the responding party to an impossible choice: give up your case now or face sanctions later." *Id.* at 245. This result, according to the Court, "[w]ields a result more severe than our rules intend or that due process will tolerate." *Id.* The Court then held a responding party may "deny a merits-preclusive request for admission for which the other party bears the burden of proof" without the risk of later sanctions. *Id.*

Here, there is no allegation that Stanley served Kathy with a merits-preclusive request for admission. Under Kathy's interpretation of *Medina*, parties could refuse to participate in discovery or disregard courts' discovery orders on the basis of an overruled objection or assertion of privilege. This is not the law, and Kathy provides no argument why it should be. We hold *Medina* does not apply to this case and overrule Kathy's second issue.

**D.   The trial court's discovery sanctions were not an abuse of discretion.**

Texas Rule of Civil Procedure 215.2 allows a trial court to sanction a party for failure to comply with a discovery request or order. Any sanction imposed must be just. TEX. R. CIV. P. 215.2(b); *Young v. Young*, No. 03-14-00720-CV, 2016 WL 7339117, at *3 (Tex. App.—Austin Dec. 15, 2016, no pet.) (mem. op.). For the sanction to be just, there must be "a direct relationship

11

between the misconduct and sanction imposed" and the sanction must not be excessive. *Id.* A trial court's ruling on a motion for sanctions is reviewed under an abuse-of-discretion standard. *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004).

In her third and fourth issues, Kathy challenges the trial court's orders sanctioning her for refusing to participate in the discovery process and comply with the court's orders. In her third issue, Kathy claims the trial court erred when it struck her jury demand, and in her fourth issue, when it rendered a default judgment against her. We disagree with Kathy on both points.

**(1)   The trial court's order striking Kathy's jury demand was harmless.**

Rule 215.2(b) provides a list of sanctions a trial court can impose. It does not, however, expressly give a trial court authority to strike a jury demand as a sanction. In certain circumstances, however, striking a jury demand may be a just sanction. *See Young*, 2016 WL 7339117, at *8; *England v. Kolbe*, No. 03-15-00409-CV, 2017 WL 1228884, at *6 (Tex. App.—Austin March 30, 2017, no pet.) (mem. op.). The Third Court of Appeals has not previously upheld a jury strike as an appropriate sanction for discovery abuses. In *England,* the court stated there was nothing in the record demonstrating that the sanction "was directly related to England's offensive conduct, that it was necessary or designed to remedy England's discovery abuse, or that it otherwise served any legitimate purpose of a discovery sanction." *England*, 2017 WL 1228884, at *7; *see also Young*, 2016 WL 7339117, at *8 (holding that striking jury demand was not a "just sanction" under the facts of the case).

We do not need to decide here whether striking a jury demand as a Rule 215 sanction is appropriate either generally or under the specific facts of this case. Even assuming the trial court's striking of Kathy's jury demand was an abuse of discretion, Kathy still had to show it was harmful, which she cannot do. *Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 667 (Tex. 1996). "The wrongful denial of a jury trial is [only] harmful when the case contains a question of fact."

12

*Caldwell v. Barnes*, 154 S.W.3d 93, 98 (Tex. 2004). "Stated another way, a trial court's 'refusal to grant a jury trial is harmless error only if the record shows that no material issues of fact exist and an instructed verdict would have been justified.'" *Nelson v. Nelson*, No. 01-13-00816-CV, 2015 WL 1122918, at *3 (Tex. App.—Houston [1st Dist.] March 12, 2015, pet. denied) (mem. op.) (quoting *Halsell v. Dehoyos*, 810 S.W.2d 371, 372 (Tex. 1991) (per curiam)). "The question then is whether there are disputed fact issues in this case upon which a jury could pass." *Id.*

Here, there were no disputed facts at the time of trial. In its escalating sanctions, the trial court had previously barred Kathy from introducing trial evidence not produced in discovery. But it was not until Kathy's attorney informed the court that Kathy would produce no evidence that the court struck Kathy's jury demand. And true to her word, Kathy produced no discovery responses, and thus by the court's prior sanction was barred from introducing evidence in support of her claims at trial. The only evidence produced during the final hearing was Stanley's testimony regarding the parties' assets and their respective values. Kathy did not appear for the final hearing or offer any evidence to rebut Stanley's testimony or raise a fact issue. Kathy claims there were two issues of disputed material fact at the final hearing. First, she claims that there was a disputed fact whether the 208 Prize Oaks Drive property was her separate property. We dispose of this specific issue as harmless error later in this opinion and it similarly does not form the basis for a challenge here. Next, Kathy claims the value of the parties' community-property home on Apple Springs Hollow was a fact issue for a jury to decide. However, Kathy did not present any evidence regarding the value of the home to contradict Stanley's trial evidence. As a result, the only evidence regarding the value of the home was the uncontroverted evidence presented by Stanley, meaning there was no factual dispute regarding the value of the home.

Because there were no material issues of fact, we need not decide whether it was appropriate for the trial court to strike Kathy's jury demand as a Rule 215 sanction. Even assuming it was an abuse of discretion, the error was harmless. Kathy's third issue is overruled.

### (2) The trial court did not err by entering a "default judgment."

Kathy asserts that the trial court erred by entering a default judgment against her. It is true that the October 18, 2021, sanctions order "renders" a default judgment, and that the decree finds her in default and states that a "default judgment" was entered by the court. But the term "default judgment" is used in a different context in family law than in other civil cases.

The effect of a traditional "default judgment" is to deem pleaded facts as confessed when the responding party fails to file an answer. *See Hampton v. Equity Trust Co.*, 607 S.W.3d 1, 8 (Tex.App.--Austin 2020, pet. denied)("The defendant in a no-answer default is 'said to have admitted both the truth of facts set out in the petition and the defendant's liability on any cause of action properly alleged by those facts.'" (citing *Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 372 S.W.3d 177, 183 (Tex. 2012); *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 930 (Tex. 2009) (per curiam)). While Texas Rule of Civil Procedure 215.2(b)(5) expressly permits trial courts to enter default judgments as a sanction for discovery violations, Texas Family Code § 6.701 precludes the trial court from taking the facts in the petition "as confessed if the respondent does not file an answer." It does not preclude use of the term "default judgment." Family law courts and attorneys commonly refer to evidentiary final hearings in cases where a party failed to file an answer (also known as "making default") as a "default hearing," and a final decree entered thereon as a "default judgment." Although the trial court in this case used that term in its Final Decree of Divorce, the record makes clear that it did not take the facts in Stanley's Counterpetition for Divorce as confessed (as prohibited by Texas Family Code § 6.701), and instead required Stanley to prove each of his claims at the final hearing with admissible evidence. As a result, the trial court

14

did not abuse its discretion by entering what it called a "default judgment" against Kathy. Because the court did not take the facts in Stanley's pleading as confessed and instead required Stanley to prove his claims with admissible evidence at trial, to the extent that the court erred in declaring a "default judgment," the error is harmless. We overrule issue four.

### E. The trial court's division of the marital estate did not constitute harmful error.

In a decree of divorce, the trial court is required to order a division of the estate of the parties "in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." TEX. FAM. CODE ANN. § 7.001. It is a long-standing principle that the trial court has no obligation to effectuate an equal division of the marital estate. *Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981); *see also Cyree v. Cyree*, No. 03-21-00319-CV, 2022 WL 17835215 at *3 (Tex. App.—Austin Dec. 22, 2022, no pet.) (mem. op.) (citing *Murff*, 615 S.W.2d at 699). We review a trial court's division of property incident to divorce for an abuse of discretion. *Id.* at *3 (citing *Penick v. Penick*, 783 S.W.2d 194, 198 (Tex. 1988); *O'Carolan v. Hopper*, 71 S.W.3d 529, 532 (Tex. App.—Austin 2002, no pet.) (*O'Carolan I*).

In her sixth issue, Kathy claims the trial court abused its discretion in dividing the community estate for two reasons: (1) the trial court "was not presented with the complete picture of the parties' property," and (2) the trial court's finding that the 208 Prize Oaks Drive was community property "skewed [the] community property division."

The first portion of Kathy's issue six is overruled. "[E]ach party in a divorce proceeding has a burden to present sufficient evidence of the value of the community estate to enable the trial court to make a just and right division." *Aduli v. Aduli*, 368 S.W.3d 805, 820 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing *Murff*, 615 S.W.2d at 698–99). "When a party does not provide values for property to be divided, that party may not complain on appeal that the trial court lacked sufficient information to properly divide the property." *Id.* (quoting *Deltuva v. Deltuva*, 113

15

S.W.3d 882, 887 (Tex. App.—Dallas 2003, no pet.) (op. on reh'g)). Here, Kathy elected not to attend trial, offer evidence, or make an offer of proof or bill of exception. TEX. R. APP. P. 33.2. She was represented at trial by her attorney of record, and trial proceeded without objection, except that Kathy's counsel asked for and received a "running objection" to Stanley's counsel of record, pursuant to the overruled motions to disqualify. Kathy offered no evidence at the final hearing and is therefore precluded from complaining to this Court that the trial court lacked sufficient information to properly divide the marital estate.[3] Further, contrary to Kathy's assertion that there was no evidence of values upon which the trial court could rely, the record shows Stanley introduced an exhibit at the final hearing outlining the contents of the marital estate and assigning corresponding values. This exhibit was offered and admitted without limitation or relevant objection by Kathy's counsel as to its contents, except for the objection discussed below. This exhibit does in fact support the trial court's decision.

Kathy next complains that the mischaracterization of the 208 Prize Oaks Drive house as community property skewed the division of the community estate in Stanley's favor. Property possessed by either party at the dissolution of marriage is presumed community property. TEX. FAM. CODE ANN. § 3.003(a). Kathy could not and did not rebut this presumption because any pleadings that would have supported Kathy's claims for separate property were struck by the trial court as sanctions for Kathy's conduct. Nevertheless, Stanley *did* present evidence that the property at issue was Kathy's separate property—testifying on cross-examination that Kathy owned the home prior to their marriage. Even so, reversal is only required if Kathy can establish that the mischaracterization of the property was harmful. *Rivera v. Hernandez*, 441 S.W.3d 413,

---

[3] To the extent that one may argue Kathy was *prevented* from offering trial evidence by the court's sanctions, that argument is misplaced. The court did not bar the admission of all evidence—it barred the admission of evidence *not produced by Kathy in discovery*. This evidentiary limitation has been in effect for more than twenty years. *See* TEX. R. CIV. P. 193.6(a). Even in the absence of the court's sanction order, Kathy would have been properly prohibited from offering evidence in support of her claims.

425 (Tex. App.—El Paso 2014, pet. denied); *In re Marriage of Morris*, 12 S.W.3d 877, 884 (Tex. App.—Texarkana 2000, no pet.) (mere mischaracterization of separate property as community property does not require reversal; appellant must prove the subsequent division of property was an abuse of discretion); *Magill v. Magill*, 816 S.W.2d 530, 533 (Tex. App.—Houston [1st Dist.] 1991, writ denied). Kathy must demonstrate that the mischaracterization of her separate property as community property caused the overall division of the property to be erroneous or unjust. *In re Morris*, 12 S.W.3d at 884; *see also Cook v. Cook*, 679 S.W.2d 581, 585 (Tex. App.—San Antonio 1984, no writ) (error must render trial court's division manifestly unjust). Kathy did not provide or point to any evidence in the record that the mischaracterization of her separate property was harmful error. Designating the house as Kathy's separate property does lead to an unequal distribution of the community estate—but the division is still in Kathy's favor, awarding her more than half of the remaining community estate. Even if the division had resulted in Stanley receiving more than 50% of the community estate, we cannot say that such a division of the community state was or would have been erroneous or manifestly unjust. Accordingly, we overrule Kathy's sixth issue.

### F. The trial court did not err in its award of pretrial attorney's fees.

"In a suit for dissolution of marriage, the court may award reasonable attorney's fees and expenses." TEX. FAM. CODE ANN. § 6.708(c). Further, Texas Rule of Civil Procedure 215.2(b)(8) allows the trial court to order a party failing to obey a discovery order of the court to pay "the reasonable expenses, including attorney's fees, caused by the failure . . . ." The party seeking fees must prove both reasonableness and the necessity of the fees sought through competent evidence. *Woollett v. Matyastik*, 23 S.W.3d 48, 52 (Tex. App.—Austin 2000, pet. denied).

A court may not adjudicate the reasonableness of attorney's fees without the benefit of evidence and abuses its discretion if it does so. *Id.* at 52–53. "[A] reviewing court may not

substitute its judgment" for that of the fact finder. *Smith v. Patrick W.Y. Tam Tr.*, 296 S.W.3d 545, 547 (Tex. 2009). Testimony of an interested witness that "is not contradicted by any other witness, or attendant circumstances, and the same is clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon" may be taken as true, as a matter of law. *Patrick W.Y. Tam Tr.*, 296 S.W.3d at 547.

Here, the trial court granted Stanley four pretrial awards of attorney's fees. It granted him $5,615 in connection with Kathy's failed motion to disqualify Maples, then $5,200, $19,152.49, and $8,718.50 as sanctions related to Kathy's discovery abuses under Texas Rule of Civil Procedure 215.2. The trial court also awarded Stanley $20,000 in appellate attorney's fees contingent on Kathy's pursuit of an unsuccessful appeal. Kathy claims all of these attorney's fees were awarded in error.

Kathy claims the $5,615 award in connection with her failed motion to disqualify was improper because Stanley "had no pleadings on file requesting attorney's fees in the disqualification proceeding[.]" Stanley, however, included a request for attorney's fees in his counterpetition for the fees required "to prepare and prosecute this suit." While Kathy claims that the motion to disqualify was "a separate issue from the divorce cause of action," she does not point to any legal authority or portion of the record supporting this position. *See* TEX. R. APP. P. 38.1(i). We, therefore, find that Kathy's argument is without merit.

Kathy next argues the three attorney's fees awards given to Stanley as a Texas Rule of Civil Procedure 215 sanction for Kathy's discovery conduct were not just because "[t]here is no nexus between [Kathy's] purported 'misconduct'" and the sanctions. Kathy, however, fails to cite to any legal authority or portions of the record in support of her position. This argument is, therefore, waived. TEX. R. APP. P. 38.1(i); *Federal Corporation, Inc. v. Truhlar*, 632 S.W.3d 697, 725 (Tex. App.—El Paso 2021, pet. denied). Kathy also claims she was entitled to a jury

18

determination of all of the fee awards. Again, she fails to cite to any legal authority or portions of the record in support of her position. As a result, this argument is also waived. TEX. R. APP. P. 38.1(i); *Truhlar*, 632 S.W.3d at 725.[4]

Finally, Kathy argues none of the attorney's fees awards were supported by competent evidence as required by *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469 (Tex. 2019). In *Rohrmoos*, the Texas Supreme Court summarized the method to determine the reasonableness and necessity of attorney's fees:

> Under the lodestar method, the determination of what constitutes a reasonable attorney's fee involves two steps. First, the [fact finder] must determine the reasonable hours spent by counsel in the case and a reasonable hourly rate for such work. The [fact finder] then multiplies the number of such hours by the applicable rate, the product of which is the base fee or lodestar. The [fact finder] may then adjust the base lodestar up or down (apply a multiplier), if relevant factors indicate an adjustment is necessary to reach a reasonable fee in the case.

*Id.* at 501. "General, conclusory testimony devoid of any real substance will not support a fee award." *Id.* The minimum sufficient evidence necessary to meet the attorney's fees claimant's burden includes "evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Id.* at 502. While the *Rohrmoos* court did not require billing records to prove reasonableness and necessity of fees, it stated they "are *strongly* encouraged." *Id.*

Stanley's requests for the four pretrial attorney's fees awards are supported by sufficient evidence. Stanley presented testimony from his attorney in support of all of the fee awards proving the reasonableness of the amount of time spent on the particular services and the reasonable hourly

---

[4] Kathy does have a citation to *Nath v. Baylor College of Medicine*, No. 01-20-00401-CV, 2022 WL 1038372, at \*17 (Tex. App.—Houston [1st Dist.] April 7, 2022, pet. filed) which appears to be in support of her argument that she was entitled to a jury determination of the attorney's fees awards. *Nath* does not, however, support her contention. Indeed, the *Nath* court stated it was not ruling on the issue.

rate of each person performing the services. Further, Stanley submitted billing records in support of the four pretrial fee awards detailing what particular services were performed, who performed the services, and when the services were performed. We thus uphold the trial court's four pretrial attorney's fee awards.

### G. The trial court erred in its award of conditional appellate attorney's fees.

As to the $20,000 in conditional appellate attorney's fees, however, we agree with Kathy that there is insufficient evidence in the record to support such an award.

The Texas Supreme Court has recently given guidance on the issue of appellate attorney's fees and when they should be awarded. *See Yowell v. Granite Operating Co.*, 620 S.W.3d 335, 354–55 (Tex. 2020). In *Yowell*, the Court held that, while *Rohrmoos* and the lodestar method was the standard for determining the reasonableness of trial attorney's fees, conditional appellate fees could not be held to such a standard, because a testifying attorney cannot be certain the actual costs of the appeal when an appeal is still a hypothetical situation. *Id.* at 355. But the Court admonished that this understanding did not excuse a party seeking conditional appellate attorney's fees from providing "opinion testimony about the services it reasonably believes will be necessary to defend the appeal and a reasonable hourly rate for those services." *Id.* The Third Court of Appeals, from which this appeal originates, has further clarified when appellate attorney's fees are appropriately backed by the evidence. *Jimmie Luecke Child. P'ship v. Droemer*, No. 03-20-00096-CV, 2022 WL 243162 at *8 (Tex. App.—Austin Jan. 27, 2022, pet. denied).

In *Droemer*, the Third Court expressly overruled one of its recent cases allowing for conditional appellate attorney's fees with testimony similar to what Stanley's counsel presented below—a set hourly rate and an estimate for the total cost of the appeal. *See Droemer*, 2022 WL 243162 at *7 (citing *Sheen v. Sheen*, No. 03-18-00358-CV, 2019 WL 2554570, at *5 (Tex. App.—Austin June 21, 2019, no pet.) (mem. op.)). After *Yowell* was decided by the Texas Supreme Court,

20

however, the *Droemer* Court concluded that bare testimony that does not touch on *both* the appellate hourly rate *and* the necessary services to be provided on appeal does not constitute sufficient evidence to sustain an appellate attorney's fee award. *Droemer*, 2022 WL 243162 at *8.

Here, Stanley's counsel's attorney's-fee evidence submitted to trial court prior to the hearing did not address conditional appellate fees and the trial court asked her to testify to the requested fees. In her testimony, counsel testified only to the appellate rates that she and her staff would charge and that she suspected an appeal "would be in excess of $20,000." During cross examination, Stanley's attorney admitted to having never handled an appeal.

Stanley's attorney did not put on evidence of the services she believed would be necessary to defend an appeal, nor did she give any explanation or basis for her assumption that an appeal would cost Stanley more than $20,000. This does not constitute sufficient evidence under *Yowell* or *Droemer*. Therefore, we sustain Kathy's seventh issue as to the award of appellate attorney's fees and remand this sole issue back to the trial court for a determination of reasonable and necessary appellate attorney's fees. *See Droemer*, 2022 WL 243162 at *8 (remanding for redetermination on this issue and collecting cases from the Houston (14th), San Antonio, Fort Worth, and Dallas Courts of Appeals doing the same).

For these reasons, we find the trial court did not abuse its discretion in awarding Stanley attorney's fees pursuant to Texas Family Code § 6.708(c) and Texas Rule of Civil Procedure 215.2(b)(8). We, however, reverse the trial court's award of conditional appellate attorney's fees for insufficient evidence. We overrule Kathy's seventh issue as to the trial attorney-fee awards and remand to the trial court for assessment of Stanley's appellate attorney's fees in accordance with the methods set forth in *Rohrmoos*. *See Yowell*, 620 S.W.3d at 355; *Droemer*, 2022 WL 243162 at *8.

21

## CONCLUSION

For the foregoing reasons, we reverse the trial court's award of $20,000 in conditional appellate attorney's fees and remand to that court for an assessment of Stanley's appellate attorney's fees. In all other respects, we affirm the trial court's Final Decree of Divorce.

ROY B. FERGUSON, Judge (sitting by assignment)

July 17, 2023

Before Rodriguez, C.J., Soto, J., and Ferguson, Judge.
Ferguson, Judge (sitting by assignment)